UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Beverly A. Brooks, | No. |
|       Plaintiff, | COMPLAINT |
| vs. | |
| United States of America, | Filed on behalf of: |
|       Defendant. | Beverly A. Brooks, Plaintiff |
| | Counsel of Record for this Party: |
| | Darrell J. Arbore, Esquire |
| | Pa. I.D. No. 63339 |
| | 8865 Norwin Avenue, Suite 27, Box 207 |
| | North Huntingdon, Pa 15642 |
| | (724) 858-0942 |

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BEVERLY A. BROOKS, | ] | No. |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | |
| | ] | |
| UNITED STATES OF AMERICA, | ] | |
| | ] | |
| Defendant. | ] | |

COMPLAINT IN CIVIL ACTION

AND NOW, comes the Plaintiff, Beverly A. Brooks, by and through her attorney, Darrell J. Arbore, Esquire and files this Complaint and in support thereof avers as follows:

1. Plaintiff is Beverly A. Brooks, an individual, residing at 19 Overview Drive, Greensburg, Westmoreland County, Pennsylvania, 15601.

2, Defendant is the United States of America, as a result of the actions of employees of the Department of Health and Human Services, Centers for Medicare & Medicaid Services (CMS) and the U.S. Department of the Treasury, Bureau of Fiscal Services, with business addresses of 3201 Pennsy Drive, Building E, Landover, Maryland 20785 and 200 Independence Avenue, S.W., Washington, D.C. 20201, respectively.

3. This matter stems from a civil lawsuit filed by Beverly A. Brooks in the Court of Common Pleas of Westmoreland County, Pennsylvania, at civil docket number 3090of 2019, for the recovery of damages as a result of personal injuries sustained by her on July 8, 2017.

4. On November 12, 2021, in response to plaintiff's counsel requesting a lien letter, CMS sent a letter setting out the amount of their lien as $12, 888.52, including the

charges they submitted had been paid for treatment of the plaintiff's injuries related to the July 8, 2017 accident, having assigned Case Identification No. 202130209001063 to the claim arising from said accident.

5. A settlement was reached in that case on or about June 1, 2023. Prior to said settlement, the plaintiff advised CMS of the lawsuit and requested a lien letter setting forth the amount of their lien so that it could be considered during settlement discussions.

6. However, CMS's calculations were incorrect in that CMS included charges for medical treatment for conditions not related to the July 8, 2017 accident, however, because the case did not get resolved until two years later, no further communications with CMS occurred until the case was resolved.

7. In a letter dated July 15, 2023, counsel for the plaintiff informed CMS that the case had been settled on June 1, 2023; pointing out the error made by CMS in that they included treatment for conditions unrelated to the July 8, 2017 accident and that the actual amount of their lien is $7,878.01.

8. Counsel's letter further stated that he would escrow the total amount of $12,888.52 until the dispute over the amount of the lien could be resolved in order to protect CMS's lien.

9. On August 14, 2023, seemingly in response to counsel's July 15, 2023 letter, CMS sent a letter stating that the amount it was now demanding to settle its lien was $2,650.29.

10. On October 9, 2023, after receiving no further communication from CMS regarding their lien, Counsel forwarded a check in the amount of $2,650.29 to resolve their

lien and released the balance that had been escrowed to the plaintiff, in reliance on CMS's demand to resolve their lien.

11. Said check was endorsed and deposited by CMS on October 18, 2023 and no further communications regarding the lien were received until some 7 months later.

12. On May 15, 2024, the U.S. Department of the Treasury, Bureau of the Fiscal Service sent a Notice of Intent to Initiate Administrative Wage Garnishment Proceedings demanding $9,996.08 to satisfy their lien. (It is unclear how this figure was arrived at because the original $12,888.52 - $2,650.29 paid would be $10,238.23 and despite numerous requests for an accounting, none has been forthcoming.)

13. On May 28, 2024, counsel filed an Administrative Wage Garnishment Request for Hearing of Eligibility Determination to the Bureau of Fiscal Service/U.S. Department of Treasury, attaching all of the documentation of the occurrences as set forth above.

14. Up to and including the May 28, 2024 request for hearing, both counsel for plaintiff and CMS have used Case Identification Number 2021302090001063 on all communications involving the CMS lien resulting from the July 8, 2017 accident and subsequent lawsuit.

15. Essentially, after settling their lien for the amount they demanded, CMS opened a new case to attempt to collect additional monies from the plaintiff regarding the accident it had previously resolved.

16. As such, the case that was originally assigned a 2021 Case Identification Number, which was resolved, was arbitrarily being assigned a 2023 Case Identification

Number, although no new claim occurred giving rise to the issuance of a new Case Identification Number.

17. On July 17, 2024 CMS sent a letter to plaintiff in response to her request for hearing after receiving the Department of Treasury's Notice of intent to Initiate Administration Wage Garnishment informing her that CMS would conduct a written records or "paper" hearing.

18. The July 17, 2024 correspondence further indicated that CMS had contacted the Benefits Coordination & Recovery Center (BCRC), and asked that they reevaluate the debt owed by the plaintiff and that they partially agreed with plaintiff and removed unrelated claims reducing Medicare's recovery claim from $9,304.03 (which is different from the amount contained on the wage garnishment document) to $8,306.71, and that if that amount was being disputed, plaintiff would have to basically start the process over by sending all supporting documentation for her hearing request to CMS and that a "hearing decision" would be submitted to plaintiff and her counsel. (It is of import to note that this decision still did not account for the $2,650.29 that was paid in response to their demand of August 14, 2023.)

19. On July 25, 2024, counsel for the plaintiff submitted the authorization which was now being required in order for plaintiff's counsel to speak on plaintiff's behalf in this matter, along with all of the documentation previously submitted showing the agency's initial error in including costs of treatment not related to the July 8, 2017 accident which should have reduced the initial amount owed to $7,878.01; the payment of the $2,650.29 which had never been accounted for; and the disputed garnishment of the plaintiff's monthly Social Security payment.

20. On July 26, 2024, a phone call between plaintiff, plaintiff's counsel and a representative of CMS , at which time plaintiff and her counsel were informed that CMS and/or the Bureau of Fiscal Services/U.S. Department of Treasury had opened two cases regarding this claim because, although there was only one lawsuit filed regarding the July 8, 2017 accident, there were two insurance companies who contributed to the settlement, which resulted in the case being assigned a different Case Identification Number, 202320109001890.

21. On August 11, 2024 counsel for plaintiff again raised all of the discrepancies on the part of CMS and the BCRC, including all of the supporting documentation setting out that the initial amount owed was incorrect; that the $2,650.29 has never been properly applied to reduce the amount of the lien; correcting several misstated facts in the previous correspondence from CMS; and setting forth the argument that the plaintiff rightfully relied upon their demand for $2,650.29 on August 14, 2023 as a reasonable compromise of the original lien which should have been $7,878.01, reasonably believing the lien to have been paid in full.

22. In response, on August 20,2024 CMS sent a letter indicating that the BCRC had dismissed the plaintiff's request for an to appeal their initial determination, setting forth for the first time that the request for review was untimely in that it hadn't been filed within 125 days of their initial demand in 2021, two years prior to the settlement of the underlying case.

23. CMS also indicated that the amount owed was now $8,174.54 representing the principal of $7,394.97 (another new figure with no explanation) and interest in the amount of $779.57.

24. This letter also set forth that the demand of $2,650.29 of August 14, 2023 was in response to receiving notification from one of the insurance company's contributing to the settlement of a payment of $10,000 and not counsel's letter dated July 15, 2023 disclosing the total amount of the settlement and challenging the amount of the lien for containing treatment not related to the accident. (There has never been any explanation as to why counsel's July 15, 2023 was ignored, despite CMS communicating with counsel since 2021.)

25. The August 20, 2024 letter also stated, without detailed explanation, that $2,650.29 was arbitrarily applied to the $10,000.00 portion of the settlement and a new 2023 Case Identification Number was assigned to the remaining portion of the settlement. Again, there is no explanation as to why counsel's reporting of the full settlement on August 14, 2023 has never been acknowledged.

26. Lastly, the letter also stated that plaintiff could appeal once again by putting a request to vacate the dismissal decision in writing to the BCRC.

27. Therefore, on September 1, 2024 counsel for plaintiff submitted a request to vacate BCRC's initial determination decision dated August 20, 2024, once again setting out the errors of CMS and the BCRC and attaching all supporting documents.

28. On November 27, 2024, CMS notified plaintiff that the BCRC had forwarded plaintiff's request to the Qualified Independent Contractor, C2C for a second level review.

29. In the meantime, as of August, 2024, the Bureau of Fiscal Service/U.S. Department of Treasury instituted a garnishment of the plaintiff's Social Security wages by deducting monies paid to the Plaintiff on a monthly basis equaling $4,242.43 in 2024

and $4,002.62 so far in 2025. These garnishments are in addition to the $2,650.29 paid by plaintiff's counsel on August 14, 2023 amounting to a total amount paid by the plaintiff of $10,895.34.

30. The Department of Health and Human Services erred in determining the initial amount of their lien by including charges for medical services that are unrelated to the accident which is the basis of the civil suit which is subject to the lien in question.

31. At no time has any of the various agencies reviewed those charges with the plaintiff, despite their having no knowledge as to which treatment regards injuries sustained in the July 8, 2017 accident.

32. More significantly, plaintiff reasonably relied upon the demand submitted by CMS for $2,650.29 on August 14, 2023 as a reasonable compromise of the original lien which should have been $7,878.01, and as full and final settlement of the claim assigned Case Identification No. 202130209001063.

33. Plaintiff relied upon CMS's demand letter for $2,650.29 to settle her only existing claim and CMS wrongfully and arbitrarily opened a new case to attempt to collect additional money from plaintiff, after agreeing to settle Case Identification No. 202130209001063 for $2,650.29 and accepting plaintiff's payment of that amount.

34. Finally, completely out of nowhere, CMS said an additional notice to the plaintiff dated March 3, 2025 demanding an additional $4,650.23 on Medicare case ID: 2023201-09-001890.

35. Plaintiff emailed a timely Request for A Hearing on March 21, 2025.

36. In a hearing decision dated May 21, 2024 CMS concluded that the debt described in the Notice dated March 3, 2025 was valid in the amount of $1,099.61.

37. Plaintiff acted in good faith in notifying CMS of her lawsuit, requesting their lien letter, and relied upon their demand to settle their lien claim.

38. CMS acted negligently and in bad faith by making a demand, accepting payment in the amount of that demand and then opening a new claim stemming from the previously resolved claim.

39. CMS had been notified by plaintiff's counsel of the entire amount of the settlement, as well as the amount of counsel fees by letter dated July 15, 2023, which appears, by all accounts, to have been ignored by CMS.

40. CMS appears to have negligently made an error in their demand to resolve Case Identification No. 202130209001063, accepted payment of the demand amount and attempted to correct their error by simply opening a new claim in 2023 and 2025 in order to demand additional funds from the plaintiff to her detriment.

41. As a result of the protracted appeals process regarding the Medicare lien related to the underlying civil lawsuit, plaintiff has been caused to incur substantial counsel fees, costs and expenses.

WHEREFORE, plaintiff demands judgment in her favor and against the United States of America, including a determination that the payment of CMS's demand settled all claims CMS may have had to plaintiff's settlement of her underlying civil suit; staying the wage attachment instituted by the Bureau of Fiscal Service/U.S. Department of

Treasury during the pendency of this matter, and dissolving said wage attachment and requiring that all monies garnished be immediately reimbursed to the plaintiff.

RESPECTFULLY SUBMITTED,

_____
Darrell J. Arbore, Esquire
Counsel for Plaintiff
